# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| JACOB R. PRATT,<br><br>    Plaintiff,<br><br>v.<br><br>CHAIRPERSON FOR NEVADA<br>PAROLE BOARD, *et al.*,<br><br>    Defendants. | Case No.: 3:18-cv-00457-MMD-WGC<br><br>**REPORT & RECOMMENDATION OF<br>U.S. MAGISTRATE JUDGE**<br><br>Re: ECF Nos. 1-1, 5 |

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Plaintiff has filed an application to proceed in forma pauperis (IFP) (ECF Nos. 4, 5) and pro se complaint (ECF No. 1-1).

## **I. IFP APPLICATION**

A person may be granted permission to proceed IFP if the person "submits an affidavit that includes a statement of all assets such [person] possesses [and] that the person is unable to pay such fees or give security therefor. Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that the person is entitled to redress." 28 U.S.C. § 1915(a)(1).

The Local Rules of Practice for the District of Nevada provide: "Any person who is unable to prepay the fees in a civil case may apply to the court for authority to proceed [IFP]. The application must be made on the form provided by the court and must include a financial affidavit disclosing the applicant's income, assets, expenses, and liabilities." LSR 1-1.

"[T]he supporting affidavits [must] state the facts as to [the] affiant's poverty with some particularity, definiteness and certainty." *U.S. v. McQuade*, 647 F.2d 938, 940 (9th Cir. 1981) (quotation marks and citation omitted). A litigant need not "be absolutely destitute to enjoy the benefits of the statute." *Adkins v. E.I. Du Pont de Nemours & Co.*, 335 U.S. 331, 339 (1948).

An inmate submitting an application to proceed IFP must also "submit a certificate from the institution certifying the amount of funds currently held in the applicant's trust account at the institution and the net deposits in the applicant's account for the six months prior to the date of submission of the application." LSR 1-2; *see also* 28 U.S.C. § 1915(a)(2). If the inmate has been at the institution for less than six months, "the certificate must show the account's activity for this shortened period." LSR 1-2.

If a prisoner brings a civil action IFP, the prisoner is still required to pay the full amount of the filing fee. 28 U.S.C. § 1915(b)(1). The court will assess and collect (when funds exist) an initial partial filing fee that is calculated as 20 percent of the greater of the average monthly deposits or the average monthly balance for the six-month period immediately preceding the filing of the complaint. 28 U.S.C. § 1915(b)(1)(A)-(B). After the initial partial filing fee is paid, the prisoner is required to make monthly payments equal to 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency that has custody of the prisoner will forward payments from the prisoner's account to the court clerk each time the account exceeds $10 until the filing fees are paid. 28 U.S.C. § 1915(b)(2).

Plaintiff, who is presently incarcerated in New Mexico[1], has submitted a certified account statement indicating that his average monthly balance and deposits for the last six months were zero, and he has a negative account balance (- $794.25). (ECF No. 4 at 1.)

Plaintiff's application to proceed IFP should be granted. Given Plaintiff's account status, he will not be required to pay an initial partial filing fee; however, whenever his prison account exceeds $10, he must make monthly payments in the amount of 20 percent of the preceding month's income credited to his account until the $350 filing fee is paid.

## II. SCREENING

**A. Standard**

Under the statute governing IFP proceedings, "the court shall dismiss the case at any time if the court determines that-- (A) the allegation of poverty is untrue; or (B) the action or appeal-- (i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(A), (B)(i)-(iii).

In addition, under 28 U.S.C. § 1915A, "[t]he court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). In conducting this review, the court "shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-- (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b)(1)-(2).

---

[1] The court performed an inmate search on the Nevada Department of Corrections (NDOC) website that indicates Plaintiff has a NDOC offender identification number, 88813, but is currently being confined out-of-state.

Dismissal of a complaint for failure to state a claim upon which relief may be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1) track that language. As such, when reviewing the adequacy of a complaint under these statutes, the court applies the same standard as is applied under Rule 12(b)(6). *See e.g. Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of America*, 232 F.3d 719, 723 (9th Cir. 2000) (citation omitted).

The court must accept as true the allegations, construe the pleadings in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969) (citations omitted). Allegations in pro se complaints are "held to less stringent standards than formal pleadings drafted by lawyers[.]" *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (internal quotation marks and citation omitted).

A complaint must contain more than a "formulaic recitation of the elements of a cause of action," it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "The pleading must contain something more … than … a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id*. (citation and quotation marks omitted). At a minimum, a plaintiff should include "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A dismissal should not be without leave to amend unless it is clear from the face of the complaint that the action is frivolous and could not be amended to state a federal claim, or the district court lacks subject matter jurisdiction over the action. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995); *O'Loughlin v. Doe*, 920 F.2d 614, 616 (9th Cir. 1990).

**B. Plaintiff's Complaint**

Plaintiff's complaint names the Chair of the Nevada Board of Parole Commissioners as well as parole board members Susan Jackson, Adam Endel, and Christopher Derico. Plaintiff alleges that he had a parole hearing on June 26, 2018, and the board did not follow their own policies and procedures for parole determinations. He claims that this violated his rights to due process, and equal protection of the laws, as well as the Americans with Disabilities Act (ADA). He seeks declaratory and injunctive relief, as well as punitive damages.

**1. Count I**

In Count I, Plaintiff asserts claims for violation of his due process rights, violation of the Americans With Disabilities Act (ADA), and Violation of the Equal Protection Clause.

**a. Due Process**

Plaintiff alleges that the Chairperson is the executive officer of the parole board, and the board is directed to create standards regarding the parole decision process that are contained in Nevada Administrative Code (NAC) 213 and in the Nevada Parole Board Risk Assessment Instrument.

First, Plaintiff alleges that the Risk Assessment Instrument includes both static and dynamic factors, with static being those that never change, and dynamic being those that can change over time. He avers that the static factors were already all taken into consideration when his sentence was passed, and to use the same factors to make a parole decision raises a question of due process. (ECF No. 1-1 at 4.) Plaintiff goes on to allege that the Risk Assessment Instrument itself is not effective for predicting recidivism, and therefore violates due process. (ECF No. 1-1 at 5.)

"The Due Process Clause applies when government action deprives a person of liberty or property; accordingly, when there is a claimed denial of due process we have inquired into the nature of the individual's claimed interest." *Greenholtz v. Inmates of Nebraska Penal and Corr. Complex*, 442 U.S. 1, 7 (1979). In other words, the person asserting a due process violation must have a protectible right. *Id*. The Supreme Court has held that "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Id*. "[T]he conviction, with all its procedural safeguards, has extinguished that liberty right[.]" *Id*. Moreover, "there simply is no constitutional guarantee that all executive decisionmaking must comply with standards that assure error-free determinations." *Id*. (citations omitted). "This is especially true with respect to the sensitive choices presented by the administrative decision to grant parole release." *Id*.

A state may establish a parole system, but it has no duty to do so. *Id*. "[A] state parole statute may *create* a liberty interest, even if the parole decision involves subjective and predictive considerations, provided that the statute contains mandatory language and imposes substantive limitations on the discretion of those making the parole decision." *Moor v. Palmer*, 603 F.3d 658, 661 (9th Cir. 2010) (citing *Bd. of Pardons v. Allen*, 482 U.S. 369, 375-79 (1987)). "If a statutory scheme requires the board to release a prisoner once the board determines that certain necessary prerequisites exist, that scheme may give rise to a liberty interest in early release." *Bergen v. Spaulding*, 881 F.2d 719, 721 (9th Cir. 1989) (citations omitted).

"Nevada's statutory parole scheme, however, expressly disclaims any intent to create a liberty interest." *Moor*, 603 F.3d at 662 (citing Nev. Rev. Stat. (NRS) 213.10705).[2] In addition,

---

[2] The statute says: "The Legislature finds and declares that the release or continuation of a person on parole or probation is an act of grace of the State. No person has a right to parole … and it is not intended that the establishment of standards relating thereto creating any such right or interest

the statute does not use mandatory language. Instead, it states that the board "*may*" release a prisoner otherwise eligible for parole, and gives factors to use in making such a determination. *Id*. (citing NRS 213.1099(1), (2)). "The Nevada Supreme Court has held that the discretion conferred on the Board by Nev. Rev. Stat. § 213.1099 'does not confer a legitimate expectation of parole release and therefore does not create a constitutionally cognizable liberty interest' in parole." *Id*. at 662 (quoting *Severance v. Armstrong*, 96 Nev. 836, 620 P.2d 369, 370 (1980)).

Since Plaintiff has no liberty interest in parole, his due process claims should be dismissed with prejudice.

**b. ADA**

Plaintiff alleges that using a prior drug problem as a factor in a parole decision violates the ADA. He intimates that the drug problem the board relied on was fourteen years old, and points out that he had not failed a drug test and had not been found guilty of drug use/possession since he was arrest in May 2005. (ECF No. 1-1 at 4.)

To state a claim under Title II of the ADA, plaintiff must allege facts showing that (1) he is a qualified individual with a disability; (2) he was excluded from participation in or denied benefits of the services, programs, or activities or subject to discrimination by a public entity and (3) the exclusion, denial of benefits or discrimination was by reason of the disability. *See* 42 U.S.C. §§ 12131, 12132.

While the ADA has been applied in the prison context, Plaintiff does not state a colorable ADA claim. First of all, Plaintiff does not allege facts that he is a qualified individual with a disability, instead he alludes to the fact that there may have been a drug problem at some point in

---

in liberty or property or establish a basis for any cause of action against the State, its political subdivisions, agencies, boards, commissions, departments, officers or employees." NRS 213.10705.

7

his past and the parole board took this into consideration in determining his parole eligibility. This is not a case where Plaintiff has been denied parole or discriminated against because of a disability. Even if some instance of a drug problem in the past could qualify as a disability under the ADA, he concedes that the denial of parole was based on many factors, and was not just based on his prior drug problem.

Given these allegations it does not appear Plaintiff could amend to state a colorable ADA claim here. Therefore, the ADA claim should be dismissed with prejudice.

### c. Equal Protection

Plaintiff argues that gender is used as a factor in the parole determination and points are added for being a male offender. He argues that the research Nevada relies on for the use of gender does not justify its use. As such, he contends that using gender as a factor in parole determination violates the Equal Protection Clause. (ECF No. 1-1 at 5.)

The Fourteenth Amendment prohibits the denial of "the equal protection of the laws." U.S. Const. amend XIV, § 1. This is "essentially a direction that all persons similarly situated should be treated alike." *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). "[T]he protections of the Fourteenth Amendment extend to state prisons." *Walker v. Gomez,* 370 F.3d 969, 974 (9th Cir. 2004) (citation omitted). "To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013) (quoting *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998)).

In other contexts, gender is a quasi-suspect classification which is subject to an intermediate level of scrutiny and requires an important governmental interest served by the regulation to justify discrimination. *See U.S. v. Virginia*, 518 U.S. 515, 532-33 (1996).

The Ninth Circuit does not appear to have confronted the issue whether the consideration of gender as one factor in a parole determination states a plausible claim for relief under the Equal Protection Clause. Nor do there appear to be any district court decisions from within the Ninth Circuit specifically addressing this issue. Assuming, without deciding, that Plaintiff's allegations state a colorable equal protection claim, it should nevertheless be dismissed because, as will be explained in detail below, the Defendants are entitled to absolute quasi-judicial immunity.

**2. Count II**

In Count II, Plaintiff asserts another due process claim. He avers that during his parole hearing on June 26, 2018, before Jackson, Endel and Derico, they failed to follow the statutes and administrative codes that govern parole determination, and failed to base their decision on factual information.

First, he claims that he received a point for not working full time for a year, when he had previously worked prior to his incarceration. (ECF No. 1-1 at 6.) He concedes he did not have a long work history because he was arrested when he was 19. (*Id.*)

Second, he contends that he received two points for being a gang member, but states that he has not been so for many years. (*Id.*)

Third, Plaintiff alleges that the board selectively considered additional factors, did not apply all mitigating factors, and misapplied aggravating factors. Specifically, he states that with respect to the factor which looks at the impact on the victim and community, the board used this as an aggravating factor but did not give facts in justification. He claims that the loss was less than

$100, and in his view the victim was not seriously injured and only had a small cut and bruises. Next, he contends that the board considered as an aggravating factor a prior sexual conviction, but he contends he does not have a prior conviction that meets that definition.

Once again, Plaintiff does not have a liberty interest in parole; therefore, he does not have a cognizable due process claim.

To the extent Plaintiff claims the parole board members relied on inaccurate information in reaching its decision, he must seek redress by way of a habeas petition. *Elliott v. United States,* 572 F.2d 238, 239 (1978) (per curiam). This is because he is essentially challenging the fact or duration of his confinement, and such a claim does not accrue until the sentence or fact of imprisonment has been invalidated. *Heck v. Humphrey*, 512 U.S. 477, 488-89 (1994). To the extent the complaint can be construed as seeking injunctive relief by having his parole eligibility records corrected, the remedy is also a writ of habeas corpus. *See Elliott*, 572 F.2d at 239.

**3. Immunity**

The court has recommended that Plaintiff's due process and ADA claims be dismissed because Plaintiff fails to state a claim on which relief may be granted. These claims, as well as the potential equal protection claim, should be dismissed for the additional reason that the Defendants are entitled to absolute quasi-judicial immunity.

The Ninth Circuit has held that "parole board officials are entitled to absolute immunity from suits by prisoners for actions taken when processing parole applications." *Sellars v. Procunier,* 641 F.2d 1295, 1302 (9th Cir. 1981); *see also Brown v. Cal. Dep't of Corr.*, 554 F.3d 747, 751 (9th Cir. 2009). The immunity does not extend to conduct "taken outside an official's adjudicatory role." *Anderson v. Boyd*, 714 F.2d 906, 909-10 (9th Cir. 1983), *abrogated in part by Swift v. California*, 384 F.3d 1184, 1189 (9th Cir. 2004) (holding parole officers not entitled to

absolute immunity when investigating parole violations, ordering the issuance of a parole hold or orchestrating a parolee's arrest, or recommending initiation of revocation proceedings). This is based on an analysis that the parole board members serve in a quasi-judicial function, and so like judges, are entitled to absolute immunity for conduct undertaken with respect to parole determinations. *Sellars*, 641 F.3d at 1302-03.

*Sellars* considered the fact that "absolute immunity for parole board officials does leave the genuinely wronged prisoner without civil redress against the official whose malicious or dishonest actions deprive the prisoner of liberty." *Sellars*, 641 F.3d at 1303. The court reasoned, however, that because "parole board officials perform functionally comparable tasks to judges when they decide to grant, deny, or revoke parole," the broader public interest is best served by granting parole board officials the absolute immunity given to judges. The court explained: "If parole board officials had to anticipate that each time they rejected a prisoner's application for parole, they would have to defend that decision in federal court, their already difficult task of balancing the risk involved in releasing a prisoner whose rehabilitation is uncertain against the public's right to safety would become almost impossible." *Id*. In addition, "time spent in depositions and on the witness stand defending their actions would leave these overburdened public servants with even less time to perform their crucial tasks." *Id*.

Plaintiff's allegations are that the defendants here improperly relied on certain factors in denying him parole, or failed to follow procedural regulations concerning parole determinations. This is exactly the type of quasi-judicial function parole board members engage in that entitles them to absolute immunity under *Sellars*.

This does not leave Plaintiff without any way to seek relief because, as mentioned above, he may file a petition for writ of habeas corpus. In addition, Nevada's statutory parole scheme requires the board to schedule a rehearing upon the denial of parole. NRS 213.142.1.

Finally, the court notes that even if Defendants were not entitled to absolute quasi-judicial immunity with respect to the potential equal protection claim, they would likely be entitled to qualified immunity because there was no clear legal authority regarding a right to equal protection of the laws insofar as gender is considered as a factor in a parole determination. *See Castro v. County of Los Angeles*, 833 F.3d 1060, 1066 (9th Cir. 2016) (en banc), *cert. denied*, 137 S.Ct. 831 (Jan. 23, 2017) (qualified immunity inquiry includes determining whether the right was clearly established at the time the defendant acted).

In sum, each of the claims against the Defendants should be dismissed with prejudice as they are entitled to absolute quasi-judicial immunity.

### III. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order:

(1) **GRANTING** Plaintiff's IFP application (ECF No. 1). Plaintiff is not required to pay an initial partial filing fee; however, whenever his prison account exceeds $10, he is required to make monthly payments in the amount of 20 percent of the preceding month's income credited to his account until the full $350 filing fee is paid. This is required even if the action is dismissed, or is otherwise unsuccessful. The Clerk should be directed to **SEND** a copy of an order adopting and accepting this Report and Recommendation to the attention of the Person in Charge of Inmate Accounts for the Penitentiary of New Mexico-North, P.O. Box 1059, Santa Fe, New Mexico, 87054-1059. A copy should also be sent to the attention of **Chief of Inmate Services for the Nevada Department of Corrections**,

P.O. Box 7011, Carson City, Nevada 89702, in the event Plaintiff is transferred back into the custody of NDOC.

(2) The complaint (ECF No. 1-1) should be **FILED**.

(3) The action should be **DISMISSED WITH PREJUDICE**.

The Plaintiff should be aware of the following:

1. That he may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

DATED: March 1, 2019.

_William G. Cobb_
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE

13